IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LINDA E. FARWELL                :
                                :
     v.                         :  Civil Action No. DKC 10-1274
                                :
LEON STORY, et al.              :
                                :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this mortgage lending case are two motions to dismiss filed by Defendants Jon Lane (doing business as Bridge Street Appraisals ("Bridge Street")) and Leon Story.[1] (ECF Nos. 66, 67). The issues have been fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Story's motion will be granted in part and denied in part. The motion to dismiss filed by Bridge Street will be granted.

---

[1] Bridge Street also filed a motion to strike Plaintiff's surreply, which she filed in response to Bridge Street's motion to dismiss. This motion to strike will be granted. Farwell did not seek leave of court before filing the surreply as required by Local Rule 105.2(a). Instead, in response to the motion to strike, she asserts that the surreply is necessitated by misstatements in Bridge Street's reply. Plaintiff had the opportunity in her own opposition to address the agency issue and there is no need for the surreply.

**I.   Background**

The facts Plaintiff Linda Farwell alleges were described in full in a prior opinion in this case. *See Farwell v. Story*, No. DKC 10-1274, 2010 WL 4963008 (D.Md. Dec. 1, 2010). Accordingly, this background discussion offers only a brief summary and assumes some familiarity with the facts.

Of relevance here, Farwell says she contacted Story, a mortgage broker, sometime in 2004. Farwell and Story then began negotiating a potential refinancing on Farwell's home in Darnestown, Maryland. Over time, Farwell and Story's relationship grew closer, and Story began making large promises about the potential value of refinancing Farwell's home. Story eventually convinced Farwell to refinance her home three times.

In advance of the second refinancing, Story hired Bridge Street to appraise Farwell's home. Bridge Street and Story allegedly conspired together to inflate the appraised value. As a result, Bridge Street overlooked several problems with the property, reported non-existent home improvements, and used inaccurate comparators. Bridge Street's appraisal produced a value of $755,000.

Farwell maintains that the actions of Story and Bridge Street led her refinance her mortgage - more than once - to a level she could not afford.

Farwell originally filed a complaint in the Circuit Court for Montgomery County on April 9, 2010, which was removed to this court on May 20, 2010. (ECF No. 1). That original complaint included claims against Defendants PNC Mortgage, Bridge Street, and Challenge Financial Investors Corporation ("Challenge"). (ECF No. 2 ¶¶ 21–28). Challenge was dismissed from the case on November 10, 2010 for failure to serve. (ECF No. 48). A December 1, 2010 opinion and order dismissed six of the seven counts of the original complaint, as well as part of the remaining count. *See Farwell v. Story*, No. DKC 10-1274, 2010 WL 4963008 (D.Md. Dec. 1, 2010).

After dismissing most of the original complaint, the court invited Farwell to amend her complaint to state any remaining claims. Farwell accordingly filed her motion for leave to amend on December 22, 2010. (ECF Nos. 55, 56). The court granted Farwell's motion to amend in part (ECF Nos. 59, 60), and Farwell filed the amended complaint on March 15, 2011 (ECF No. 64).

In the amended complaint, Farwell asserts separate negligence claims against Story and Bridge Street, a constructive fraud claim against Bridge Street, an intentional misrepresentation claim against Bridge Street, and a civil conspiracy claim against both Bridge Street and Story. (ECF No.

3

64).[2] Both Story and Bridge Street have now filed motions to dismiss all of those counts. (ECF Nos. 66, 67). Farwell opposes both motions. (ECF Nos. 69, 71).

## II. Standard of Review

Defendants Story and Bridge Street have moved to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). At this stage, the court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, the court need not accept unsupported legal allegations. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Nor must it agree with legal conclusions couched as factual allegations, *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009), or conclusory factual allegations devoid of any reference to actual events, *United Black*

---

[2] She also asserts a claim against PNC Mortgage that is not relevant to this opinion.

*Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

## III. Analysis

### A. Tort Claims Against Bridge Street

Counts III-V allege several tort claims against Bridge Street, including negligence, constructive fraud, and intentional misrepresentation arising from Bridge Street's December 2006 appraisal. (ECF No. 64). Bridge Street argues that the "economic loss rule" precludes any tort claim against Bridge Street, as Farwell's loss was purely economic and there was no privity between Bridge Street and Farwell. (ECF No. 66-1).

Generally, a plaintiff may not recover in tort when the loss is purely economic. *U.S. Gypsum v. Baltimore*, 336 Md. 145, 156 (1994). Maryland recognizes, however, that a plaintiff may recover in tort for economic loss when there is an "intimate nexus" between the parties. *Jacques v. First Nat. Bank of Maryland*, 307 Md. 527, 534 (1986). "This intimate nexus is satisfied by contractual privity or its equivalent." *Id.* at 534-35. The strict requirement of privity limits a defendant's exposure to risk to foreseeable parties and events. *Walpert, Smullian & Blumenthal, P.A. v. Katz*, 361 Md. 645, 671 (2000).

When no contractual privity exists, Maryland courts have recognized a duty of care to a non-contracting third party when

the defendant has knowledge that the third party would rely on his or her work. *See id.* at 693-94. In *Walpert*, for example, the Court of Appeals of Maryland held an accountant liable for economic losses suffered by the third party plaintiffs because the plaintiffs met face-to-face with the accountant and told him that they were relying on his audit. *Id.* Maryland courts will also recognize a duty of care to a third party suffering economic loss when the contracting parties intend to confer a benefit on the third party. *Shofer v. Stuart Hack Co.*, 124 Md.App. 516, 529 (1998), *cert. denied*, 354 Md. 331 (1999). A plaintiff asserting a third party beneficiary claim must show that he or she is a part of a class specifically intended to be the beneficiaries of the contract. *Id.*

Farwell contends that she has contractual privity or its equivalent with Bridge Street because of her agency relationship with Story. (ECF No. 69-1). According to Farwell, Story acted as her agent when he contacted Bridge Street to appraise Farwell's property. (ECF No. 69-1).

Under Maryland law, an agency relationship is established by express agreement or by inference. *Green v. H&R Block, Inc.*, 355 Md. 488, 503 (1999). In the absence of an express agreement, courts determine whether an agency relationship exists by examining three required factors: 1) an agent who is subject to the principal's right of control; 2) an agent who has

6

a duty to act primarily for the benefit of the principal; and 3) an agent who holds the power to alter the legal relations of the principal. *Patten v. Bd. of Liquor License Comm'rs for Baltimore City*, 107 Md.App. 224, 238 (1995); *Schear v. Motel Mgmt. Corp.,* 61 Md.App. 670, 687 (1985). A party asserting a claim resting upon an agency relationship has the burden of proving the existence, nature, and extent of that relationship. *Green*, 355 Md. at 503.

The amended complaint does not allege that an express agreement created an agency relationship between Farwell and Story. Furthermore, the facts asserted are insufficient to imply an agency relationship between the two parties. Farwell does not assert that Story was ever subject to her control,[3] that he was under a duty to act in her best interest, or that he had the power to alter her legal relations. In fact, the complaint does not once explain who Story was working for: the borrower, the lender, both the borrower and the lender, or neither party.

Instead, Farwell asserts in her opposition that Story must have been her agent because he was acting "[i]n his capacity as

---

[3] If anything, the complaint suggests the opposite. It alleges that Farwell was controlled by Story, who "preyed on [her] vulnerable status" and "convinced [her] that refinancing, rather than selling, her home was in [Farwell's] best interests" by assuring her that "the value of her house would soon increase to over $1,000,000." (ECF No. 64 ¶¶ 9-10, 13).

loan broker." (ECF No. 69-1, at 2). Maryland courts do not assume that the mortgage broker always acts as an agent to the borrower. *See, e.g.*, *Harmon v. BankUnited*, No. WDQ-08-3456, 2009 WL 3487808, at *4 (D.Md. Oct. 22, 2009) ("Maryland courts do not apply a bright line rule that brokers are always agents of the buyer but instead examine the relationships among the parties to a transaction."). In any event, Farwell's argument that Story was her agent by virtue of his status as a loan broker is nowhere to be found in the complaint. A plaintiff "is bound by the allegations contained in [her] complaint and cannot, through the use of motion briefs, amend the complaint." *Zachair, Ltd. v. Driggs*, 965 F.Supp. 741, 748 n.4 (D.Md. 1997).

Because Farwell does not sufficiently allege facts demonstrating that Story was her agent acting in furtherance of that agency when he contacted Bridge Street to conduct the appraisal of her house, Bridge Street has no duty of care to Farwell by way of agency.[4]

Nor does Farwell allege facts establishing any other type of intimate nexus with Bridge Street. Farwell does not assert that she was a party to any contract with Bridge Street. She does not allege that she was a foreseeable party relying on the

---

[4] Even if there were an agency relationship, there is no indication in the complaint that Story acted as Farwell's agent in getting the house appraised.

appraisal.  And, she makes no allegation that that she was an intended beneficiary of the contract.  Although at least one court has suggested that the scope of an appraiser's liability extends beyond specific foreseeable parties and third party beneficiaries to a "universe of persons who could be expected to rely on the appraisals," Farwell fails to allege facts satisfying even this broad standard.  *See Superior Bank, F.S.B. v. Tandem Nat. Mortg., Inc.*, 197 F.Supp.2d 298, 336 (D.Md. 2000) (holding that appraisers could be liable in tort to a purchaser of secondary mortgage loans when the purchaser is within a group expected to rely on the appraisal); *but see Huntington Mortg. Co. v. Mortg. Power Fin. Servs., Inc.*, 90 F.Supp.2d 670, 672-73 (D.Md. 2000) (rejecting broad liability without contractual privity for appraisers).  Indeed, the complaint does not indicate that Farwell had any interaction with Bridge Street or that she even saw the appraisal before she signed the closing documents for her April 2007 refinancing.

Therefore, the economic loss rule does apply.  Counts III, IV, and V will be dismissed.

**B. Negligence Against Story**

Count II of Farwell's amended complaint alleges that Story's acts constituted negligence and that his negligence was the proximate cause of Farwell's financial losses.

9

Story argues that Farwell did not sufficiently allege negligence; rather, the amended complaint states that that Story's conduct was "intentional." (ECF Nos. 64, 67). Generally, an intentional act may be willful, wanton, or fraudulent, but it may not be negligent. *Walser v. Resthaven Memorial Gardens*, 98 Md.App. 371 (1993), 393, *cert. denied*, 334 Md. 212 (1994) (citing *Adams v. Carey,* 172 Md. 173, 186 (1937)). Nevertheless, when one or more consequences are unintended, the tortious act may give rise to an action in negligence. *Id*. at 393-94; *see also McCance v. Lindau*, 63 Md.App. 504, 514 (1985); *Gassemieh v. Schafer*, 52 Md.App. 31, 42 (1982) ("We see no reason why an intentional act that produces unintended consequences cannot be a foundation for a negligence action.").

In this case, Farwell alleges only that Story intended to maximize his commissions, fees, and charges by selling a larger mortgage to Farwell. (ECF No. 64 ¶ 70). Nowhere in the amended complaint does Farwell allege that Story intended the economic loss and financial ruin allegedly incurred by Farwell as a result of Story's negligence. Consequently, Story's intentional acts may be the basis of an action for negligence.

**C. Civil Conspiracy Claim Against Story and Bridge Street**

Count VI of Plaintiff's amended complaint alleges that Story and Bridge Street entered into a conspiracy "to commit

fraud and constructive fraud by inflating the appraisal value of Plaintiff's house[.]" (ECF No. 64 ¶ 84).

A plaintiff alleging civil conspiracy must prove: "(1) A confederation of two or more persons by agreement or understanding; (2) some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal; and (3) Actual legal damage resulting to the plaintiff." *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 154 (2007) (citing *Van Royen v. Lacey*, 262 Md. 94, 97-98 (2007)). In Maryland, conspiracy is not a distinct tort that can sustain an award of damages in the absence of an underlying tort. *Alexander & Alexander, Inc., v. B. Dixon Evander & Assocs.*, 336 Md. 635, 645 (1994)("[A] conspiracy cannot be made the subject of a civil action unless something is done which, without the conspiracy, would give a right of action."). A defendant who is not "legally capable" of committing the underlying tort cannot be found liable for civil conspiracy. *Shenker v. Laureate Educ., Inc.*, 411 Md. 317, 351 (2009).

Here, Bridge Street was not legally capable of committing the underlying torts of fraud and constructive fraud because it did not owe a duty of care to Farwell. Farwell's amended complaint does not allege that Story committed fraud or constructive fraud. Consequently, the underlying torts alleged

11

to have been the aim of the conspiracy were never committed and never could have been committed by either Story or Bridge Street. Because a claim of conspiracy cannot be sustained independent from its underlying tort, Farwell has failed to allege sufficiently that Bridge Street and Story conspired to commit fraud and constructive fraud against her.

**IV. Conclusion**

For the foregoing reasons, the court will grant in part and deny in part Defendant Story's motion to dismiss. (ECF No. 67). The court will grant Defendant Bridge Street's motions to dismiss and to strike. (ECF Nos. 66, 73). A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge